The next case on our calendar is Chad E. Cohen v. Postal Holdings and the United States Postal Service, which is on submission. Counsel, you may proceed. Thank you, Your Honors. May it please the Court, Mr. Conroy, Ms. Cranston. My name is Beverly Rogers. I'm the attorney for the plaintiff appellants. I would be remiss, Your Honor, if I didn't acknowledge Ms. Cranston's significant contribution to writing the appellate brief. She was the principal author and she deserves most of the credit for having written, in my opinion, an excellent brief. That's nice of you to say. Thank you. There are material facts in dispute, Your Honors, whether plaintiffs, whether . . . Before you get there, I have a threshold question that's troubling me about the whole case. Yes, Judge. Why are we here? By that I mean you're asking us to construe a question of Connecticut law, the applicability of de facto actions vis-à-vis the language of a lease. Is that allowed under Connecticut law? Is this lease ambiguous under Connecticut law? There was no basis for subject matter jurisdiction in the district court once the post office was dismissed. Don't our cases say that when at an early stage the basis for federal jurisdiction evaporates, that a district court abuses its discretion if it does not dismiss the case without prejudice to proceed in state court? That's a very good question, Your Honor, because I didn't understand why the federal district court retained jurisdiction. It had jurisdiction because it had supplemental jurisdiction over the main claim once the third party claim was removed. Once the post office was dismissed on motion before any discovery had heard, all it was left with is the novel question of Connecticut law that you're now asking us to decide and whether we consider certifying it to Connecticut Supreme Court, if we can even do that. I think if there was an abuse of discretion, the appropriate remedy here would be to vacate the decision below and direct the district court to dismiss the case without prejudice to recommencement in state court. That's where you wanted to begin with, right? Yes, Your Honor, and that's where I prefer to be litigating. Either in state court or to the extent, and I don't understand, frankly, why you haven't done that, go to the federal circuit with respect to a suit against the post office. Why didn't you pursue the post office? I didn't pursue the post office because I believed that the principal or the defendant, the appropriate defendant in this case was . . . Well, there can be more than one defendant. I think your argument seems to be that even though the post office, on the facts you have alleged, clearly has failed to do what it contracted to do with respect to this property and so would pretty clearly be liable, but liable only in the appropriate court, which is not this one or the district court. There is also liability for a state question against a state party, plain and simply. What have we got to say? I'm a big one on certifying, but certifying sometimes doesn't even seem necessary. By the way, in Connecticut, the district court could have certified as well if it thought that it was an issue. Not in New York, but in Connecticut, it could have. Well, that issue was researched and our decision was that the federal district court could retain jurisdiction, and that's why we didn't file a motion to remand it back to the Connecticut Superior Court. We did research that issue and that's the conclusion . . . With all due respect, I think your research may have been wrong. There's a case we decided in 2003 called Valencia, which says when the basis for original jurisdiction, whether federal question or diversity, is lost, then the district court abuses its discretion, unless there's some extraordinary circumstance, in not sending the case to state court either by a remand, if it's been a removed case as this one was, or by a dismissal without prejudice to recommencement. I'm not sure we're ever going to get to the issues that you and your colleague worked so hard to brief. Okay, thank you. May I continue? Please. Well, the case is before us and the district court did retain jurisdiction, so why don't you tell us what the district court got wrong in granting summary judgment to postal holdings? It's our contention that there are material facts in dispute with regard to whether defendant postal holdings' conduct was the proximate cause of interference with the Cohen's use and enjoyment of their property. Doesn't that turn on the legal issue of whether the lease, the language of the lease, is the exclusive place that a court may look to understand whether an out-of-possession owner still has control? Well, Ms. Quattrochi, who is the member manager of postal holdings, exercised control when she had no standing to do so. But the question is, under Connecticut law, can we even look at that if we find that the language of the lease clearly says that the post office is the only party responsible? Even if she had gone in there and said to the post office, don't worry, I'm taking care of everything, which in a way, as you say, she did. If she had done all that, if the language of the lease is absolutely clear that says she has no standing to do that, under Connecticut law, doesn't that leave liability solely with the post office? No, Your Honor. I respectfully disagree. You only have dicta in a lower court case in Connecticut that suggests that maybe that isn't so. Every other Connecticut court, all the higher courts, have been absolutely clear on this question of when the lease is clear. Why does the fact of some dicta by some lower court raise enough to raise a fact question? Well, there are questions of fact in this case, and I think that . . . the defendants did or said, but they don't go to the question of whether Connecticut law is clear when the lease is clear, and they don't go to the clarity of the lease. The questions of fact go to the defendant's behavior, but they don't go to this question of law, do they? Well, Your Honor, I respectfully disagree. Disagree. Yes. I guess another way of saying it is the questions of fact you've identified may not be material questions of fact if Connecticut law says look to the lease, don't look to what happened. I believe Connecticut law does look to the conduct of the defendants, and I think I'm out of time. Thank you. Thank you. You have reserved two minutes for rebuttal. Yes, thank you. We'll hear from Mr. Conway. May it please the Court, my name is Matthew Conway. I represent the defendant, Postal Holdings. The sole and controlling issue in this case is the lease agreement. Paragraph 9 of the 1982 lease agreement specifically let all control be within the United States Postal Service. The first question is the question that Judge Cogan asked before. Did the district court err in reaching this question at all? I would submit no, Your Honor. The district court kept supplemental jurisdiction. There was no motion to dismiss the case, and the issues are not novel issues. There's nothing to be certified to the Connecticut Supreme Court. This is black letter, fundamental duty law. Duty could be a question of law, and in order to have a negligence cause of action, there must be duty. The question in Connecticut, probably most states, is that possession and control and not ownership is what controls duty. In order to have a negligence cause of action or this nuisance cause of action, there must be conduct on behalf of the defendant. The appropriate defendant is the United States Postal Service, the appropriate . . . You're mixing up several things. There is a question of conduct. That is, the defendants did do certain things. The question is, does that conduct, if you're going to bring up nuisance, which I didn't think was brought up until the reply brief, if you're going to bring up nuisance, is that conduct enough to be caused so that somebody could find that the defendant, you, was a source of the nuisance? If you're leaving nuisance out, negligence, the question is, is there a duty or does the Connecticut law make clear that there is no duty regardless of conduct when the lease is clear? So, don't tell me there was no conduct because on that, there may well be an issue of fact. Well, Your Honor, on the negligence cause of action, there must be a duty. And the lease agreement is clear that postal holdings owed no duty. It was entirely the duty of . . . If there are other states where that isn't so, what you say about Connecticut is the only issue before us. That's correct, Your Honor. So, as far as there being no possession and control, there is no possession and control of postal holdings, and therefore, there's no duty owed and there's no negligence cause of action, and the district . . . I know you really want to talk about the language of the lease. That's what you're hanging your head on. I understand why, and that's fine. So, let me ask you some questions about the language of the lease. I have seen less ambiguous allocations of responsibility and absolution clauses for an absentee owner than this one is. All this one says is that the post office shall construct and maintain buildings, structures, and improvements, which are quasi-buildings. So, the post office is responsible for buildings, maintaining the buildings. I don't know if that means the post office is responsible for making sure that they are in good enough shape so that rats don't move in or vandals don't move in. I think it means you can't have the building fall on somebody. That's not maintaining the building. But, this doesn't disclaim the kind of things that real estate absolution clauses typically do. Why are you so confident in this language, I guess I'm saying? Because there's no other language in this lease agreement, this 1982 lease agreement, that provides any right for the landlord for any discretion. You can't leave us if we found that there was no language at all that really allocated these responsibilities. It would leave your client liable. Your Honor, the clear language of paragraph 9 says that the post office is responsible for all buildings, all structures, all improvements, and is responsible for maintenance, which they consider necessary. There's zero control left with my client. And, as a result of that, I do hang my hat on the lease agreement as the sole. Can we consider the fact in determining whether this language is ambiguous that, in fact, your client did intervene and did take certain actions to try to address the problem? I'm not saying whether those actions amount to actual control, but if we were to find this language is ambiguous, could we also find that she acted in such a way that showed she thought she had some control and some right to intervene? I would submit that there's not material questions as to whether my client intervened in any way, and the entirety of control was left for the postal service. The fact that the reference in one of the briefs to an emergency flooding of the basement and calling a plumber does not arise to a material issue of control on behalf of postal holdings. Do you put any weight on the indemnity clause and the fact that they're? I don't think that the fact that you have an indemnity clause reserves possession and control in the landlord just because you have a clause in the contract, which is standard in contracts to have, to say that the tenant should indemnify you for any losses. Well, on what basis did Ms. Quadrachoki call the plumber? She called the plumber when there was a flooding of the basement, and someone called her so that the building wouldn't continue to flood. Why would she say, not my job? I'm sorry? Why wouldn't she say, it's not my job to do that? Call the post office. I think when water is literally flooding at the moment it's coming in, I think it's an appropriate action for her to take to. Are you saying that if the plaintiffs not had talked to you but had talked to a neighbor because their phone was out of order and said to the neighbor, hey, there's water here, call a plumber, that's essentially what you did? That is, you know, it wasn't because it was your property, it was just you were doing them a favor in the same way that a neighbor would. I suppose in that same grounds we'd have control of that neighbor's house if we called for a plumber there as well. But isn't Ms. Quadrachoki also the manager and a member of Post Holdings? Yes. So that's not disputed? It's not disputed that she's a member of Postal Holdings, no. And the manager? Correct. So she did that under the apparent authority of Post Holdings when she called the plumber, isn't that true? Sure. So what's the problem with Post Holdings being required to pay for these torts of nuisance and negligence? Because that's not the law. The law has to have, just because she called for a random act ten years ago when there was a flood, doesn't mean that she takes on all duties of repair that the post office has taken on. It's the post office's responsibility that they signed in this lease agreement that the post office would maintain all structures on their property. You have to understand, she was able, your client Quadrachoki, to get the best client in the world because they're never going to become insolvent, even though they are insolvent, the United States Postal Service. So when she gets calls, there's a flood in the property, there's vandals, and she calls up the post office and says, you should put up a fence. It raises a question, why is she bothering? And I believe under Connecticut law, we can determine whether the language of a written instrument is ambiguous or not by reference to the parole evidence that might inform that decision. So when she's doing all these things, it sure looks like she's someone who thought, well, the post office is supposed to take care of this in the first instance, but if it doesn't, I'm on the hook, and so I better get them to move. No, Your Honor, when the post office failed to take care of the property, she sent them letters reminding them of their responsibility under the lease agreement. Why? Why did she care? Probably a moral person who cared about property, cared about society, and so the post office who took on this obligation, she told them that they should do what they had contracted to do. If there is this relationship, then I suppose we should certify to Connecticut to say, is this enough to take on responsibility? I mean, is this lease clear enough? And send it back to Connecticut that way. That's an odd way of sending it back to Connecticut, when we can also say it should have been in Connecticut in the first place, because the district court, if the issue was complicated, should certainly not have decided. I would submit, Your Honor, that the lease being so straightforward, the Connecticut appellate court having said that the issue of control expressed definitively in a lease becomes, in effect, a question of law. Control has no legal or technical meaning unless it is definitively expressed in the lease. It was definitively. One more question I have to ask you. You're relying in part on the indemnity clause as well, right? No, the opposing counsel is arguing the indemnity clause. Oh, you think the indemnity clause cuts in their favor? Their claim is that the indemnity clause somehow reserves control. I submit that paragraph 9 is dispositive of the entire issue. Thank you. Thank you. Ms. Rogers, you retain two minutes for rebuttal. Thank you, Your Honors. With all due respect to Mr. Conway, Ms. Quattrochi was no good Samaritan. Your Honors. What was she acting as? She was acting as if she had apparent authority. Isn't that your argument? I don't mean to be flippant, but she was acting as Leona Helmsley in the day where problems with the property were everybody else's problems. I appreciate Your Honors raising the fact of the flooding in the basement. Not only did Ms. Quattrochi control the property with regard to interfering in the lease between the town of Ridgefield and the Postal Service, which she had no standing to do. She called her plumber with regard to the flooding in the basement, but she also paid real estate taxes that were owed and then collected those real estate taxes back from the post office. Ms. Quattrochi had only one entity's interest in mind, and that was her family's interest. And she was a descendant of the previous owner of the property. She's one of the daughters. Yes, Your Honor. And so if it behooved Ms. Quattrochi to do something affirmatively to protect her family's— I think there's a difference between an owner paying taxes when they know that the government will step in and take the property over and know that they can get the money back from the government in doing that. That doesn't suggest the kind of control here. The plumbing issue is a different one. The paying of taxes, frankly, I think is a different level of thing. My point, Your Honor—thank you very much. My point is that Ms. Quattrochi acted in her best interests alone, and the Coens were just little people. Thank you very much. I have one question, one short question. Yes. Did you oppose—did the Coens oppose the district court's granting of the Postal Service's motion to dismiss against them? No. Okay. All right. Thank you. Thank you very much. We'll reserve decision. Thank you.